## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5742 | **DATE** | 4/18/2003 |
| **CASE TITLE** | Ray Thompson vs. Community Unit School District 200 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. There is no genuine issue of material fact, and District is entitled to a judgment as a matter of law. Its motion for summary judgment is granted, and Thompson's claims and this action are dismissed in their entirety. (9-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 21 2003 | |
| | Notified counsel by telephone. | | date docketed | 20 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 APR 18 PM 2:00 | 4/18/2003 date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAY THOMPSON,                    )
                                 )
          Plaintiff,             )
                                 )
     v.                          )    No.  01 C 5742
                                 )
COMMUNITY UNIT SCHOOL DISTRICT 200,)
                                 )
          Defendant.             )

MEMORANDUM OPINION AND ORDER

Ray Thompson ("Thompson") has sued Community Unit School District 200 ("District"), charging that its failure to hire him as a high school math teacher was motivated by racial and age bias and was hence a violation of an entire congeries of statutory and constitutional provisions: Title VII (42 U.S.C. §§2000e to 2000e-17[1]), Sections 1981 and 1983 (in those two respects via the Fourteenth Amendment's Equal Protection Clause) and the Age Discrimination in Employment Act of 1967 ("ADEA," 29 U.S.C. §§621 to 634). District has moved for summary judgment under Fed. R. Civ. P. ("Rule") 56, and both sides have complied with this District Court's LR 56.1.[2] For the reasons stated in

---

[1] Further citations to Title 42 provisions will take the form "Section --."

[2] LR 56.1 is designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements (in each instance with record citations), thus highlighting the existence or nonexistence of factual disputes. This opinion cites to District's LR 56.1(a)(3) statement as "D. St. ¶ --," to Thompson's response as "T. Resp. St. ¶ --," and to Thompson's LR 56.1(b)(3)(B) statement of additional facts "T. St. ¶- -." This opinion employs the same "T." and "D ."

20

this memorandum opinion and order, District's motion is granted and this action is dismissed in its entirety.

## Background

Thompson is an African-American over the age of 40 who is certified by the State of Illinois to teach high school mathematics (D. St. ¶1). In 1966 he received his Bachelor of Science Degree in Mathematics from Indiana Institute of Technology with a 2.3 GPA (T. St. ¶2, D. St. ¶31). In 1968 he received his Master's Degree in Education from University of St. Francis[3] with a 3.4 GPA (T. St. ¶¶3-4). In 1996 Thompson received his Illinois Teacher's certificate from Illinois Benedictine College with a 3.7 GPA (T. St. ¶4, T. Mem. 3).

In 1996 Thompson was hired by Glenbard High School District 87 ("Glenbard") as a full-time math teacher (T. St. ¶13), but he was dismissed from the position at the end of the 1996-97 school year (D. St. ¶21). Although Glenbard attributes his dismissal to poor performance (id.), Thompson disputes that reason, and on September 16, 1997 he filed a charge of discrimination against

---

abbreviations in referring to exhibits ("Ex."), memoranda ("Mem.") and reply memoranda ("R. Mem.").

[3] There seems to be some confusion as to the institution from which Thompson received that degree. T. St. ¶3 refers to St. Francis College, T. St. ¶4 refers to University of St. Francis and Thompson's resume refers to St. Francis University (D. Ex. I at D15). Because University of St. Francis is the only school with a like name in Fort Wayne, Indiana, this opinion uses that appellation.

2

Glenbard (T. Resp. St. ¶21).

On August 3, 1999 Thompson filed out an application for a full-time high school mathematics position in the District (D. St. ¶29), and he completed all supporting materials about September 28, 1999 (D. St. ¶30). District never hired Thompson.

As part of the District application, Thompson completed seven screening questions that had been developed by Ventures for Excellence ("Ventures")(D. St. ¶32) to test full-time teacher applicants by studying the responses of outstanding teachers considered to be the best in their field (D. St. ¶7). On those seven questions Thompson had only one answer marked correct, with the other six being tagged with question marks (T. Resp. St. ¶32). While District contends that Thompson's score was just one out of seven (D. St. ¶32), Thompson argues that the only possible markings for a question are a "plus, minus or zero" (T. Resp. St. ¶32)--so he disputes District's view of the matter.

Even though that does raise a question as to what effect is to be given the half-dozen question marks on Thompson's questionnaire, what is significant for present purposes is that when the founder and president of Ventures reviewed Thompson's answers he said "I did not find any of these statements that are consistent with the excellence we are looking for" (D. Ex. J at 16). In that respect there are significant disputes between the parties as to the minimal standards required for candidates to be

3

hired by District (contrast T. Mem. 6-8 with D. Mem. 8-9). But it is undisputed that District would certainly prefer candidates who had higher scores on the Ventures questionnaire (T. Resp. St. ¶8).

In any event it has proved unnecessary to identify the universe within which Thompson's claims of discrimination are to be evaluated. What follows will seek to identify the alternatives in that regard, but the ensuing discussion confirms that Thompson is a loser from any perspective.

During the three school years beginning in 1999 and ending in 2002, a total of 43 math teachers were hired by District (T. St. ¶41). But 15 of those were middle school positions (six of which also required certification in language arts, reading, social studies and/or Spanish)(D. Resp. St. ¶41). Thompson was not vying for those positions because his 1999 application, 2000 resume and 2001 resume all said that he was seeking high school positions (T. Resp. St. ¶41). Of the 28 high school positions, two were less than full time, leaving 26 full-time or almost full-time positions (T. Resp. St. ¶41). Nine of those positions were filled before Thomson had completed his District application on September 29, 1999, thus leaving 17 positions available for possible comparative evaluation (T. Resp. St. ¶41).

Of those 17 positions, the record contains pertinent

4

information on qualifications of only 11:[4]

| Table 1 | | | | | | |
|---|---|---|---|---|---|---|
| Name | Posting Date for Position | Date Recommended for Hire | Hire Date | Ventures Score | Under- graduate GPA | Years of Full-Time Math Experience |
| Jill Stevens | 3/29/00 (T. Ex. 5) | 5/25/00 (D. St. ¶44) | 6/14/00 (D. St. ¶44) | No Score[5] (D. St. ¶44) | 3.8 (D. St. ¶44) | 0 (D. St. ¶44) |
| Robert Pinta | 4/5/00 (T. Ex. 5) | - | 5/10/00 (T. St. ¶46) | - | 3.6 (T. Ex. 12 at D664) | - |
| John Ratkovich | 4/27/00 (T. Ex. 5) | 6/3/00 (D. St. ¶44) | 6/14/00 (D. St. ¶44) | 2 (D. St. ¶44) | 2.57 (D. St. ¶44) | 2 (D. St. ¶44) |
| Jocelyn Straight | 5/10/00 (T. Ex. 5) | - | 5/24/00 (T. St. ¶47) | - | 3.41 (T. Ex. 12 at D675) | - |
| Michael Sheffield | 6/21/00 (T. Ex. 5) | 7/6/00 (D. St. ¶44) | 7/26/00 (D. St. ¶44) | 4 (D. St. ¶44) | 2.7 (D. St. ¶44) | 4 (D. St. ¶44) |
| Amy Berquist | 1/17/01 (T. Ex. 5) | 3/20/01 (D. St. ¶44) | 3/14/01 (D. St. ¶44) | 4 (D. St. ¶44) | 2.957 (D. St. ¶44) | 5 (D. St. ¶44) |
| Michelle Allured | 3/14/01 (T. Ex. 5) | 3/19/01 (D. St. ¶44) | 4/11/01 (D. St. ¶44) | 6 (D. St. ¶44) | 3.112 (D. St. ¶44) | - |

---

[4] Because Thompson has provided no supporting facts upon which this Court can determine the relative qualifications of some candidates, the analysis here will perforce be conducted on the candidates for whom minimal information exists in the record, as shown in the table in the text. Indeed, District correctly points out that the timing of Thompson's EEOC charge of discrimination is such as to put only six actual hires under the microscope for comparative purposes--but Thompson would fail even if scrutiny were to be expanded to cover everyone listed in the text table.

[5]During her deposition Assistant Principal of Wheaton-Warrenville South High School Beth Sullivan graded Stevens' Venture Questionnaire and gave it a score of 4 (D. St. ¶49).

5

| | | | | | | |
|---|---|---|---|---|---|---|
| Timothy Brown | 3/14/01 (T. Ex. 5) | 3/26/01 (D. St. ¶44) | 4/11/01 (D. St. ¶44) | 4 (D. St. ¶44) | 4.0 (D. St. ¶44) | - |
| James Whitson | 4/25/01 (T. Ex. 5) | - | 08/01 (T. St. ¶51) | 5 (T. Ex. 12 at D716) | - | 2 (T. Ex. 12 at D716) |
| Craig Keuer | 5/2/01[6] (T. Ex. 5) | - | 08/01 (T. St. ¶51) | - | 2.68 (T. Ex. 12 at D727) | - |
| Scott Grumbles | 7/5/01[7] (T. Ex. 5) | - | 7/11/01 (T. St. ¶49) | - | - | 7 (T. Ex. 12 at D747) |

District has a policy that assures equal employment opportunities to all persons regardless of race, age or other protected category (D. St. ¶5). It also expressly encourages the recruitment and hiring of minority employees (id.).

One other fact is relevant to the identification of those other applicants whose situations are to be considered in evaluating Thompson's claims. Thompson has regularly continued the annual submission of applications or resumes to update his application file for full-time employment as a math teacher for District (T. St. ¶53).

## Summary Judgment Standards

Familiar Rule 56 principles impose on movant District the burden of establishing the lack of a genuine issue of material

---

[6] James Whitson applied for District employment February 10, 2001 (T. St. ¶51).

[7] Craig Keuer applied for District employment February 10, 2001 (T. St. ¶51).

fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).
For that purpose this Court must "consider the evidentiary record
in the light most favorable to the non-moving party...and draw
all reasonable inferences in his favor" (Lesch v. Crown Cork &
Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). And Pugh v. City
of Attica, 259 F.3d 619, 625 (7th Cir. 2001) has echoed the
teaching of Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986):

> A genuine issue of triable fact exists only if "the evidence
> is such that a reasonable jury could return a verdict for
> the nonmoving party."

As with any summary judgment motion, this Court accepts nonmovant
Thompson's version of any disputed facts, but only so long as it
is supported by record evidence.

### Title VII and ADEA Claims

Thompson argues that District's failure to hire him as a
full-time math teacher[8] is the result of discrimination on the
basis of race or age or both. In the absence of any adequate
showing[9] of intentional discrimination, Thompson must attempt to

---

[8] Although Thompson Mem. 5 says that District's adverse employment actions include its failure to interview him for the position as a full-time math teacher, all references in Complaint ¶¶13, 18, 20, 25 and 27 are to the failure to hire him to that post. This opinion will address the failure-to-hire issue as the only one staked out by the pleadings.

[9] In the summary judgment context, of course, Thompson's burden is only that of creating reasonable inferences, not one of proof as such (see Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1124 (7th Cir. 1994)). But any continued repetition of

create a presumption of such discrimination (<u>Loyd v. Phillips Bros., Inc.</u>, 25 F.3d 518, 522 (7th Cir. 1994)).[10]

To that end <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05 (1973) has established the burden-shifting format under which Thompson has the initial burden of establishing a prima facie case of unlawful discrimination by showing that (1) he belongs to a racial minority or age-protected group, (2) he applied and was qualified for a job for which the employer was seeking applicants, (3) he was rejected despite his qualifications and (4) the position was given to someone of a different race or age category who had similar or lesser qualifications (<u>Malacara v. City of Madison</u>, 224 F.3d 727, 729 (7th Cir. 2000)(race); <u>Kralman v. Illinois Dep't of Veterans' Affairs</u>, 23 F.3d 150, 153-56 (7th Cir. 1994) (ADEA)). After such a showing the burden shifts to District to articulate a

---

that burden involves an awkward locution, an awkwardness contributed to by the fact that so much of the caselaw speaks of what a party responding to a Rule 56 motion must "establish" or "prove" or "show." Whenever this opinion employs such terms, it should therefore be understood as denoting Thompson's lesser burden of creating reasonable inferences, not the actual burden of persuasion.

[10] Thompson states his belief "that he has evidence of intentional discrimination by the Defendant" (T. Mem. 5). But Thompson's unsubstantiated speculation as to the timing of District's establishment of minimum standards or as to any claimed nonadherence to those minimum standards are insufficient to give rise to an inference of intentional discrimination under <u>Troupe v. May Dep't Stores Co.</u>, 20 F.3d 734, 736 (7th Cir. 1994). Hence the analysis here follows the familiar <u>McDonnell Douglas</u> burden-shifting formulation.

8

legitimate nondiscriminatory reason for its employment decision. If District does so, it has satisfied its burden and Thompson must then establish that District's reasons were pretextual. Throughout the analysis the burden of persuasion remains with Thompson, though the burden of production shifts.

Where a defendant has met its burden of producing non-discriminatory reasons, it is irrelevant whether a prima facie case has been made (Malacara, 224 F.3d at 729). And in that respect any employer "may hire or refuse to hire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for discriminatory reason" (id. at 731 (internal quotation marks omitted)).

In this instance District has indeed articulated legitimate nondiscriminatory reasons for not hiring Thompson (McDonnell Douglas, 411 U.S. at 802). It says that all of the other candidates who were hired, as Thompson was not, were better qualified than Thompson because they had higher undergraduate GPAs, higher scores on the Ventures questionnaire, more years of teaching experience or a combination of those factors (D. R. Mem. 5-8).

That then requires Thompson to show that District's asserted reasons were a pretext for race discrimination (McDonnell Douglas, 411 U.S. at 804-05). Mills v. Health Care Serv. Corp.,

9

171 F.3d 450, 458 (7th Cir. 1999) (citations and internal quotation marks omitted) exemplifies our Court of Appeals' consistent teaching:

> Because a Title VII claim requires intentional discrimination, the pretext inquiry focuses on whether the employer's stated reason was honest, not whether it was accurate. In short, [plaintiff] has the burden of showing that [defendant's] reasons for hiring [other candidates] were either lies or had no basis in fact.

But Thompson strikes out in those terms because it is indisputably true that the candidates eventually hired actually had the better qualifications identified by District. So he attempts to shift the inquiry to whether those factors were actual requirements and to whether they were appropriate metrics on which to rely.

Just to state matters in those terms demonstrates that Thompson's argument is a nonstarter. Even though Thompson may believe that the factors on which District relied for its decisions were not the best measures of potential teaching success, his own opinion as to his qualifications cannot establish a dispute of material fact (Millbrook v. IBP, Inc., 280 F.3d 1169, 1181 (7th Cir. 2002)). Even if some other prospective employer might perhaps consider (for example) that the Venture questionnaires were not the best evaluatory tool or that Thompson's more recent GPA should be more relevant than his 33-year old undergraduate GPA (and there has been no such showing), this Court does not sit as a "super-personnel department" with

10

plenary authority to review District's business decisions. Instead this Court must respect the employer's unfettered discretion to choose among qualified candidates (id.). In sum, it cannot be said that District's proffered reasons that Thompson was not as well qualified as other candidates are pretextual.

### Section 1983 Claim

Thompson also asserts a Section 1983 race discrimination claim under the Fourteenth Amendment's Equal Protection Clause. To that end Thompson must show that the District violated his constitutionally protected rights, either pursuant to a municipal policy or custom or as a result of action by a final policymaker (Bennett v. Roberts, 295 F.3d 687, 699 (7th Cir. 2002)). As Minority Police Officers Ass'n v. City of South Bend, 801 F.2d 964, 966 (7th Cir. 1986) teaches, "[t]he Equal Protection clause of the Fourteenth Amendment is violated only if the defendants have acted with a discriminatory purpose or intent." By definition that requires a showing that plaintiff was treated differently from similarly situated persons (Johnson v. City of Fort Wayne, 91 F.3d 922, 944-45 (7th Cir. 1996)). And as Nabozny v. Podlesny, 92 F.3d 446, 454 (7th Cir. 1996) has described the requisite element of intent:[11]

It implies that a decisionmaker singled out a

---

[11] Although the quotation that follows speaks of a "group," it is of course well established that an individual may invoke the Equal Protection Clause as well.

11

particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

Thompson's Section 1983 claim is flawed in a number of respects. Any one could be fatal--in combination they are devastating.

First, Thompson cannot show that District intentionally discriminated against African-American applicants over the age of 40, for it has already been shown that all of the candidates District hired were better qualified than he was. Moreover, District *did* hire an African-American teacher just a few months before Thompson applied, and it has also hired teachers over 40 (T. Ex. 5)--surely things that negate the invidious intent that Thompson charges. Thompson also fails to show any policy of race discrimination--to the contrary, District not only has a non-discrimination policy but it also encourages the recruitment and employment of minority employees (D. St. ¶5; T. St. ¶43).

Finally, Thompson is wrong in contending that District's Director of Human Resources or a high school principal should be considered a final policymaker because District's Board of Education never interfered with a hiring recommendation that was brought to it (T. Mem. 9). As a matter of Illinois law, the board of education of a public school district is itself the final policymaker with respect to all employment decisions (Duda v. Bd. of Educ., 133 F.3d 1054, 1061 (7th Cir. 1998)).

## Retaliation Claim

Thompson's last claim for relief is that District failed to hire him in retaliation for his filing of a racial discrimination claim against Glenbard. Such retaliation claims involve a variant on the McDonnell Douglas formulation, under which Thompson must first show that (1) he engaged in statutorily protected expression, (2) he then suffered an adverse action and (3) there is a causal link between the protected activity and the adverse action (Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1146 (7th Cir. 1997)). If Thompson were able to do that, the rest of the standard pattern would be the same: District would have to come forward with legitimate non-discriminatory reasons for its actions, after which Thompson would have to demonstrate pretext by showing that a retaliatory reason more likely motivated the actions or that District's proffered explanation lacks credence.

This opinion can eschew any discussion of the patent weakness of any suggestion by Thompson of causality at the prima facie stage. Instead Thompson's retaliation claim succumbs in all events, because he cannot show the pretextual nature of District's legitimate (and already thoroughly vetted) non-discriminatory practice of hiring only more qualified teachers.

13

## Conclusion

There is no genuine issue of material fact, and District is entitled to a judgment as a matter of law. Its motion for summary judgment is granted, and Thompson's claims and this action are dismissed in their entirety.

_____
Milton I. Shadur
Senior United States District Judge

Date: April 18, 2003